Paul L. GANN and Ruth Ann Gann, et al., Plaintiffs,

v.

DELAWARE STATE HOSPITAL, et al., Defendants.

Civ. A. No. 81–165.

United States District Court, D. Delaware.

June 29, 1982.

Bayard Marin, Marin & Hudson, Wilmington, Del., for plaintiffs.

Matthew J. Lynch, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Plaintiffs Paul L. Gann and Ruth Ann Gann brought this suit as coadministrators of the Estate of John E. Gann and in their individual capacities alleging that defendants violated provisions of 42 U.S.C. §§ 1983 and 1988. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. Presently before the Court is defendants' motion to dismiss pursuant to Rules 12(b)(2) (lack of jurisdiction over the person) and 12(b)(6) (failure to state a claim upon which relief can be granted) of the Federal Rules of Civil Procedure.

*Facts*

In passing on defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the allegations of the complaint must be accepted as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40

L.Ed.2d 90 (1974); *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973), *cert. denied sub nom.,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Plaintiffs allege that John E. Gann ("John") was involuntarily committed to the Delaware State Hospital ("Hospital") on or about December 12, 1980. John had an extensive history of severe mental illness and had made several attempts on his life. He had previously been admitted for treatment for mental illness, twice at the Hospital and once at the Governor Bacon Health Center. He also had had episodes of drug abuse. Shortly before he was admitted to the Hospital on December 12, John's mother, plaintiff Ruth Ann Gann, found him with a plastic bag over his head; he had been sniffing glue. At that time John threatened to hurt himself; when he was admitted to the Hospital, John threatened to hurt himself and others. Despite those threats, defendants, and their agents, servants and/or employees, placed John in an area from which he could easily escape, be threatened by other patients and where his suicidal tendencies could not be adequately monitored. As a result of these acts, John escaped briefly on or about December 16, 1980, but later returned. On or about December 19, 1980 John was found dead in the closet of his room with a plastic bag over his head. Complaint at ¶ 11–13, Docket No. 1.

Plaintiffs allege that John's death resulted from defendants' willful, wanton and negligent acts. Although framed as a civil rights action alleging deprivation of life and property without due process of law as well as a denial of equal protection, the complaint essentially alleges a cause of action for wrongful death predicated on defendants' failure to adequately supervise and care for the deceased, John E. Gann. Defendants have moved to dismiss the complaint for lack of jurisdiction over the person and for failure to state a claim upon which relief can be granted. Defendants make several arguments in support of these grounds, each of which will be discussed in turn.

*Lack of Jurisdiction Over the Person*

*Eleventh Amendment*

Defendants argue that plaintiffs' suit against the Hospital as well as against the individual defendants in their official capacities is barred by the eleventh amendment. The amendment provides, in part, that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." It has been applied to suits against a State brought by its own citizens as well. *See Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 342 (1890). Plaintiffs acknowledge that the eleventh amendment bars any claim against a state agency or the officials of such an agency sued in their official capacities, but argue that the Delaware State Hospital is not a state agency in the context of the eleventh amendment.

In determining whether any particular suit is barred by the eleventh amendment, the ultimate test is whether the State is the real party in interest.[1] *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Urbano v. Bd. of Managers of N. J. State Prison,* 415 F.2d 247 (3d Cir. 1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 968, 25 L.Ed.2d 129 (1970). That determination, a matter of federal law, involves the examination of a number of factors including state law defining the relationship between the agency and the state; whether any judgment would have to be paid out of the state treasury; whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; whether it has autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation; and whether the State had immunized itself from responsibility for the agency's operations. *King v. Caesar Rodney School District,* 396 F.Supp. 423

---

1. Plaintiffs do not argue that the state has waived its immunity under the eleventh amend-

ment. *See generally Pagano v. Hadley,* 535 F.Supp. 92 (D.Del.1982).

(D.Del.1975); *Gordenstein v. University of Delaware*, 381 F.Supp. 718 (D.Del.1974).

Plaintiffs argue that the Hospital performs a proprietary rather than a governmental function. Delaware law makes all persons admitted to the Hospital liable for the care, maintenance and support they are furnished while patients at the Hospital. 16 *Del.C.* § 5127(a). Pursuant to that statute, the Hospital billed plaintiffs for John's stay. The record indicates that in fiscal year 1980 the Hospital received $2,648,-168.52 from such billings.[2] Moreover, the operation of a mental hospital is not an exclusively governmental function. Thus, plaintiffs argue, the Hospital and its officials should be amenable to suit.

▪ The Court cannot agree. Although the Hospital[3] has the authority to keep the funds it collects as reimbursement for hospital treatment, 29 *Del.C.* § 6102(b), it does not do so. All the money received from patient billings is deposited in the State's general fund and is not available for operating expenses.[4] The Hospital has no authority to withdraw funds from the treasury in excess of its appropriation. 29 *Del.C.* § 6506. Even if the Court were to assume that all of the billings were ultimately returned to the Hospital in the form of state or other funding, they would only account for 17.8% of the Hospital's funding.[5] Moreover, the Delaware legislature has provided that in the final analysis the cost of maintenance "shall be borne by the State and shall be paid for by the State Treasurer...." 16 *Del.C.* § 5106.

Even if the Hospital could respond to any judgment entered against it without recourse to the state treasury, that would be but one factor for the Court to consider. The Hospital is not a separate state agency; it simply performs a function statutorily assigned to the Department of Health and Social Services. 16 *Del.C.* § 5109. As a consequence, the Hospital serves the entire population of Delaware and, in fact, is the only facility in Delaware authorized to detain a "dangerous mentally ill person" without his consent. 16 *Del.C.* § 5122. The Delaware courts have held that as a matter of state law the Hospital, owned and controlled by the State, is a governmental agency. *State Bd. of Trustees of the Delaware Hospital v. Boyer*, 52 Del. 458, 159 A.2d 793 (Del.Super.1960) (suit by trustees for balance due for patient's maintenance and care is for sole benefit of the State and thus not subject to statute of limitations). The Hospital has no authority to own real estate and may purchase and sell property only on the authorization of the General Assembly. 16 *Del.C.* § 5103.

Based on the foregoing considerations, the Court concludes that the Hospital is a state agency. Plaintiffs' claims against the Hospital and the individual defendants in their official capacities are therefore barred by the eleventh amendment.

*Failure to State a Claim*

*42 U.S.C. § 1983—Person*

▪ Even if the claims against the Hospital and the individual defendants in

---

2. Defendants' Answer to Interrogatory 12(b) (Docket No. 9) provides:

12(b) Funding for Delaware State Hospital, F.Y. '80

| | Name of Account | Total Dollars | Percent of Total |
|---|---|---|---|
| a. | State Funds | $12,779,230.65 | 86% |
| b. | Payments from Patients | 2,648,168.52 + | 0% + |
| c. | Private Donations | 164,719.06 | 1.0% |
| d. | Federal Funding | 60,089.15 | .4% |
| e. | Other | 1,851,934.11 | 12.14% |

+ Payments from patients are deposited in the General Fund of the State and are not available to Delaware State Hospital for operating expenses.

---

3. The authority actually rests with the Department of Health and Services, 16 *Del.C.* § 5127, which plaintiffs apparently acknowledge to be a state agency.

4. See note 2, *supra.*

5. *Id.*

their official capacities were not barred by the eleventh amendment, those claims would have to be dismissed because a state and its agencies are not "persons" within the meaning of 42 U.S.C. § 1983. *United States ex rel. Gittlemacker v. Philadelphia*, 413 F.2d 84 (3d Cir. 1969), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970). In determining whether a state agency is a person for the purposes of section 1983, a court must undertake much the same analysis as when it evaluates the scope of eleventh amendment immunity. The principal inquiry in both cases must be "whether the exposure of the particular entity to liability will substantially burden the State Treasury or otherwise substantially hinder those operations over which the State has retained control." *Gordenstein v. University of Delaware*, 381 F.Supp. 718 (D.Del.1974); *see Skomorucha v. Wilmington Housing Authority*, 504 F.Supp. 831 (D.Del.1980). As the analysis above indicated, the Hospital is maintained and controlled by the State and has little or no independent existence. The Court therefore concludes that neither the Hospital nor the individual defendants in their official capacities are persons within the meaning of 42 U.S.C. § 1983.

Defendants also argue that the complaint fails to state a claim against the individual defendants in their individual capacities and must be dismissed as to them as well. Each of defendants' arguments will be considered in turn.

### Eighth Amendment

■ The complaint alleges that the Hospital violated John's eighth amendment rights during his residence. Although, as plaintiffs argue, the eighth amendment cases provide useful analogies in dealing with allegations of deprivations of due process or equal protection, the eighth amendment itself applies only to punishment imposed after conviction of a crime. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). Inasmuch as John was a patient in a mental institution rather than a convicted

inmate, the eighth amendment claim must be dismissed.

### 42 U.S.C. § 1983—State Action

■ Defendants argue, based on *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), that the complaint fails to allege sufficient state involvement in John's death. In *Martinez* plaintiffs sued the state parole board seeking compensatory and punitive damages after their daughter was murdered by a parolee. The Court held that the fourteenth amendment only protected the deceased from deprivation by the State of life without due process of law:

> Although the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of State tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death [citations omitted] we hold that, taking those particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

444 U.S. 284–85, 100 S.Ct. at 558.

Defendants argue that the State's failure to properly evaluate and monitor John's condition does not amount to the type of involvement required by *Martinez*. I do not agree. Although the *Martinez* court did distinguish section 1983 claims from state tort actions, it based its holding on the fact that "under the particular circumstances of [that case] appellants' decedent's death [was] too remote a consequence of the parole officers' action...." 444 U.S. at 285, 100 S.Ct. at 559. The circumstances of this case are very different from those of *Martinez*. Here the decedent was admitted to the Hospital because he had threatened to take his own life. One of the Hospital's functions with regard to John Gann was to prevent the very act which took place. Based on these facts, defendants' argument that John's suicide was too remote a consequence of State's actions must be rejected.

## Due Process

The Court's earlier decision as to plaintiffs' eighth amendment claim leaves the complaint with only one viable federal claim, other than equal protection—the deprivation of life and property in violation of the fourteenth amendment's due process clause. Defendants argue that plaintiffs' failure to allege either the existence of an established state procedure which violated their constitutional rights or the absence of adequate state remedies for such a violation must result in a dismissal for failure to state a claim upon which relief can be granted.

Defendant's position cannot defeat plaintiffs' substantive due process claim.[6] The leading case in this area is *Youngberg v. Romeo*, —— U.S. ——, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In *Romeo* an involuntarily committed mentally retarded resident of a Pennsylvania state hospital filed a section 1983 action alleging violations of the fourteenth amendment.[7] The court held "that the right to personal security constitutes an 'historic liberty interest' protected substantively by the Due Process Clause" and "it must be unconstitutional to confine the involuntary committed . . . in unsafe conditions." —— U.S. at ——, 102 S.Ct. at 2458 (quoting, *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977)). The Court recognized that the interest in personal security is not an absolute, in any given case the question must be not simply whether it has been infringed, but whether the extent or nature of the infringement violates due process. After balancing the conflicting interests involved, the Court adopted the standard announced by Chief Judge Seitz concurring in the decision below. Judge Seitz concluded that " 'the Constitution only requires that the courts make certain that professional judgment in fact was exercised [in determining the level and type of care and supervision given any particular patient]. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made.' " —— U.S. at ——, 102 S.Ct. at 2461 (quoting *Romeo v. Youngberg*, 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C. J., concurring)).

The Court explained that the standard announced, which was lower than the "compelling" or "substantial" necessity tests espoused by a majority of the en banc Third Circuit Court of Appeals, would impose liability only when the decision by a professional decision-maker[8] "is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." —— U.S. at ——, 102 S.Ct. at 2462.

The plaintiff in *Romeo* had been injured on over sixty occasions while he was confined. Although the court recognized that the right to protection is not activated by each individual mishap befalling an institutionalized person, it held that "[t]he state . . . has an unquestioned duty to provide reasonable safety for all residents and personnel within the institution." —— U.S. at ——, 102 S.Ct. at 2461. The plaintiff in this case was not the victim of a series of attacks while confined. He was, however, the "victim" of several prior suicide at-

---

**6.** The complaint is ambiguous as to the type of due process claim being asserted, alleging only that the defendants deprived "decedent of his life and property without due process of law...." Docket No. 1 at ¶ 15. The Court has difficulty conceptualizing the form of a procedural due process claim and received no aid from plaintiff at oral argument. Accordingly, for purposes of the motion before the Court, it will be assumed the only arguably viable due process claim is predicated upon substantive due process.

**7.** Although this case does not involve claims by a mentally retarded plaintiff, the Third Circuit Court of Appeals has held that *Romeo's* analysis is equally applicable to the fourteenth amendment claims of a mentally ill plaintiff. *Scott v. Plante*, 641 F.2d 117 (3d Cir. 1981). It should be noted, however, that *Scott* relied on the decision of the Third Circuit en banc which was subsequently vacated by the Supreme Court.

**8.** The Court defined a "professional decision-maker" as a person competent, whether by education, training or experience, to make the particular decision at issue. —— U.S. at —— n.30, 102 S.Ct. at 2462 n.30.

tempts. The defendants here, as in *Romeo*, knew or had reason to know of those prior attempts and had a constitutional duty to provide for the safety of the involuntarily committed John Gann. Unless their failure to do so can be justified on the basis of accepted professional judgment, practice or standards, *Romeo* mandates a finding of potential section 1983 liability.[9] *See Scott v. Plante*, 641 F.2d 117 (3d Cir. 1981).

*Specificity of Pleading*

 The conclusions reached above require that all of plaintiffs' complaint be dismissed insofar as it alleges misconduct by the Hospital and by the individual defendants in their official capacities. Their complaint arguably states a viable substantive due process claim, although as drafted it is concededly ambiguous. Moreover, the complaint is deficient for other reasons. It is well settled in this circuit that civil rights complaints, especially those drafted by experienced counsel, must set forth with specificity the acts of each defendant that are alleged to have violated plaintiffs' civil rights. *See, e.g., Hall v. Pennsylvania State Police*, 570 F.2d 86 (3d Cir. 1978); *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976); *Robinson v. McCorkle*, 462 F.2d 111 (3d Cir.), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). The complaint in this action paints with an extremely broad brush, alleging: "The defendants, any or all of them and their agents, servants, and/or employees committed the following willful wanton and negligent acts...." Complaint at ¶ 14, Docket No. 1. The complaint then alleges a variety of acts without attributing them to any individual defendant. Such allegations do not satisfy the pleading requirements of the Third Circuit Court of Appeals. Not only do plaintiffs fail to specify the acts of each defendant, they apparently rely on concepts of vicarious liability which do not apply to suits brought pursuant to section 1983. *See*

*Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Rather than dismiss the complaint, the Court will grant plaintiffs' leave to file an amended complaint.

An order will be entered in accordance with this opinion.

---

9. The complaint alleges the deprivation of life and property, not liberty. Although the Court concludes that the analysis of *Romeo* is equally applicable to plaintiffs' decedent's interest in life—the most fundamental of interests, it simplifies analysis to proceed in terms of the liberty interest in protection. Given the fact that plaintiffs will have to file an amended complaint in any event, it might simplify future litigation if the claim were recast in those terms.