Norman HERER, etc., et al., Plaintiffs,

v.

William J. BURNS, et al., Defendants.

Civ. A. No. 82–0080–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 3, 1984.

Steven D. Rosenfield, Charlottesville, Va., Bruce J. Ennis, Dover, Del., for plaintiffs.

Ronald D. Hodges, Harrisonburg, Patrick O'Hare, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is a 42 U.S.C. § 1983 action for compensatory and punitive damages brought by relatives of Jeffrey Herer, an involuntarily committed patient at Western State Hospital ("Hospital") in Staunton, Virginia. Plaintiffs assert a pendent wrongful death claim as well. Jeffrey Herer died on July 27, 1981, after suffering a seizure while at the Hospital. Plaintiffs allege in their complaint that Jeffrey Herer's death was the direct result of willful, deliberate acts and omissions of Western State Hospital and three individual defendants.

The Hospital has moved to dismiss the case against it and has also moved for summary judgment. The individual defendants, having already had the case dismissed against them in their official capacities, but not in their individual capacities, have moved to dismiss for failure to comply with the Virginia Medical Malpractice Act procedures, Va.Code §§ 8.01–581.1 to –581.9 and on several other grounds. Several of these motions, having been briefed and argued, are now ripe for disposition.

I. *Eleventh Amendment Immunity*

In support of its motion to dismiss and for summary judgment, the Hospital

argues that it is immune from suit under § 1983. The eleventh amendment [1] to the United States Constitution bars suits by private parties who seek to impose a liability that must be paid out of the state treasury; thus an "arm" or "alter ego" of the state is immune from money damages unless immunity is expressly waived. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The Hospital urges that it is an agency of the Commonwealth of Virginia and has no identity distinct from the Commonwealth. Furthermore, it maintains that any damages won by a judgment for the plaintiffs would be paid out of the state treasury.

The issue, then, is whether the Hospital is an arm of the Commonwealth or whether it has sufficient local powers and autonomy independent of the Commonwealth to take it from under the eleventh amendment umbrella. While in the appropriate case this issue might be decided as a matter of law, the court concludes that the immunity status of a state mental hospital is best considered "on the basis of its own peculiar circumstances," *see Jacobs v. College of William and Mary*, 495 F.Supp. 183, 189 (E.D.Va.1980), *aff'd without opinion*, 661 F.2d 922 (4th Cir.), *cert. denied*, 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981), and therefore factual material shall inform the court's decision. The Hospital has provided the court with affidavits and other documents in support of its motion for summary judgment.

Courts examine a number of factors in determining whether an institution is an arm of the state for eleventh amendment purposes. Among the factors are the status of the defendant under state law, the degree of state control over the institution, whether and to what extent any judgment will be payable from the state treasury rather than its own funds. Other factors include whether the institution is separately incorporated, whether it has independent power to sue and be sued and enter into contracts, and whether the institution owns its own property. *See United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir.1982); *Blake v. Kline*, 612 F.2d 718, 722 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980); *Gann v. Delaware State Hospital*, 543 F.Supp. 268, 270 (D.Del.1982); *Jacobs v. College of William and Mary*, 495 F.Supp. 183, 189 (E.D.Va.1980), *aff'd without opinion*, 661 F.2d 922 (4th Cir.), *cert. denied*, 454 U.S. 1033, 102 S.Ct. 572, 70 L.Ed.2d 477 (1981).

The Hospital from its creation in 1825 has been a public mental hospital. [2] Today, it is one of a number of hospitals comprising the Department of Mental Health and Mental Retardation's ("Department") system of state facilities. [3] To assure that the Department's system works cohesively, the General Assembly has placed all the institutions, [4] including the Hospital, under the

---

1. The eleventh amendment states:
   The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.
   While the amendment by its terms does not bar suits against a state by its own citizens, the United States Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal court by her own citizens as well as by citizens of another state. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Parden v. Terminal Ry.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

2. The General Assembly in 1825 Va.Acts Ch. 35, established the Hospital, calling it the Western Lunatic Asylum. It was completed in 1828.

3. The Hospital is under the control of the State Mental Health and Mental Retardation Board, composed of members appointed by the Governor. Va.Code §§ 37.1–3 to –10. The Commissioner of the Department supervises and manages the whole system of facilities. Va.Code § 37.1–42.1(1).

4. The 1982–84 Executive Budget notes that the Commonwealth provides care to its mentally ill and handicapped citizens through four comprehensive hospitals (one of which is the Hospital), two regional institutes, two institutes for children, two geriatric hospitals, and a number of other training facilities and community service boards.

control of the Commissioner of the Department. The Commissioner enters into "all contracts and agreements," accepts and holds grants, donations, bequests, and trusts, employs personnel, and hires hospital directors. Va.Code §§ 37.1–42.1, –42.2. Hospital directors report directly to the Commissioner, thus giving the Commissioner direct line authority over the principal officer at the Hospital. The Department issues a number of regulations and procedures which extensively govern many areas of the Hospital's operation. In sum, Virginia law not only treats the Hospital as an arm of the State but the state maintains a substantial degree of control over the Hospital as well.

Furthermore, revenue from patient charges is deposited in the state treasury. Other funding sources, such as grants, donations, and trusts are also subject to state control. The General Assembly appropriates the Hospital's operating budget. *See* 1983–84 Appropriations Act 147–48. According to affidavits, approximately $18,000, however, is maintained in a so-called "welfare funds special" account that is not subject to state control. These funds are raised by patients and staff through car washes, hot dog sales, and other similar activities. This fund, not under the State's direct control, amounts to only .065 percent of the Hospital's 1983–84 budget. Given the magnitude of the judgment sought by the plaintiffs against the Hospital, the court finds that any judgment in this case would necessarily be paid out of the state treasury.[5]

Finally, the Hospital lacks the power to sue or be sued. Rather, all suits involving the Hospital must be brought by or against the State's Comptroller. Va.Code §§ 8.01–193, –196. The Hospital may not enter into contracts; Va.Code § 37.1–42.1 imposes this duty on the Commissioner. Property, moreover, is owned in the name of the Commonwealth and not the Hospital itself. Va.Code § 37.1–11. Nor is the Hospital a separate corporation. Instead, it is a part of the Commonwealth's system of mental hospitals.

Under these circumstances, the Hospital must be granted eleventh amendment immunity. The factors considered above demonstrate with no genuine issue of material fact existing that the Hospital is not only under the control and dominion of officials appointed or elected on a statewide basis but also exercises next to no fiscal independence. In *Gann v. Delaware State Hospital,* 543 F.Supp. 268 (D.Del.1982), for example, the court found that a state mental hospital was an arm of the state and immune under the eleventh amendment despite the fact that a portion of its funding remained under its own control, a portion considerably larger than the .065 percent under the Hospital's control. Other cases dealing with state hospitals' eleventh amendment immunity suggest a similar result. *See, e.g., Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir. 1981); *Lillard v. Delaware State Hospital for the Chronically Ill,* 552 F.Supp. 711, 719 (D.Del.1982); *Butler v. Commissioner of Mental Health,* 463 F.Supp. 806, 808 (E.D.Tenn.1978).

The Hospital contends additionally that it is not a "person" within the meaning of 42 U.S.C. § 1983. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Having decided that the Hospital is immune under the eleventh amendment from any relief that might be granted in this action, the court need not reach this issue.

In sum, the Hospital's motion for summary judgment shall be granted. Because the plaintiffs have failed to prove a valid federal claim against the Hospital, the plaintiffs' pendent state claims against the Hospital shall be dismissed as well. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

---

**5.** The court in *Blake v. Kline,* 612 F.2d 718, 723 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980), stated that "[t]he most important factor in the determination of eleventh amendment immunity is whether judgment will have to be paid from the state treasury".

Of course, as discussed above, the court has already dismissed the action against the individual defendants in their official capacities. This disposition, however, does not affect any possible liability of the defendants in their individual capacities. The court observes that plaintiffs have alleged more than mere negligence on the individual defendants' part; consequently, the court declines to reconsider its earlier ruling denying their motion to dismiss on immunity grounds.

## II. *Exhaustion of Medical Malpractice Act Procedures*

■ The individual defendants named in this action, William J. Burns, Dr. Glenn Yank, and Dr. William Grey, additionally moved to dismiss on the ground, as the court construes their motion, that the plaintiffs failed to exhaust their available remedies under the Virginia Medical Malpractice Act, Va.Code §§ 8.01–581.1 to –581.9. The Act provides that "[n]o action may be brought for malpractice against a health care provider unless the claimant notifies such health care provider in writing prior to commencing the action." Va.Code § 8.01–581.2. Other provisions call for the formation of a medical malpractice review panel,[6] evidentiary hearings,[7] and a written opinion by the panel.[8] While the court observes that the plaintiffs' complaint asserts a pendent wrongful death action rather than a medical malpractice claim, the court need not decide whether such procedures are necessary in a wrongful death action. It is settled that the Virginia Medical Malpractice Act is applicable in a diversity action. Thus, in *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287 (4th Cir.1980), the court held that exhaustion of this available remedy is required before bringing a medical malpractice action in a federal court sitting in diversity in Virginia.[9] The plaintiffs, however, assert constitutional deprivations under 42 U.S.C. § 1983 arising out of the same "common nucleus of operative facts" as the pendent wrongful death claim; they do not rely solely on diversity jurisdiction. The Supreme Court has stated categorically that exhaustion of state remedies is not a prerequisite to an action under § 1983. *See Patsy v. Florida Board of Regents,* 457 U.S. 496, 500–01, 516, 102 S.Ct. 2557, 2559–60, 2568, 73 L.Ed.2d 172 (1982). Therefore, the plaintiffs are not required to avail themselves of the Virginia Medical Malpractice Act before this court has jurisdiction to consider constitutional and pendent wrongful death claims. The individual defendants' motion to dismiss on this ground shall be denied.

## III. *Eighth Amendment Claim*

■ Plaintiffs assert, in addition to their § 1983 claims secured under the fourteenth amendment, that the defendants violated Jeffrey Herer's right to be free from cruel and unusual punishment in violation of the eighth amendment. The individual defendants have moved to dismiss the plaintiffs' eighth amendment claim.[10] The eighth amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Although cases construing the eighth amendment may provide useful analogies in dealing with allegations of deprivations of due process, the amendment itself only applies to punishment imposed after conviction of a crime. *See Youngberg v. Romeo,* 457 U.S. 307, 325, 102 S.Ct. 2452, 2463, 73 L.Ed.2d 28 (1982); *Id.* 457 U.S. at 331, 102 S.Ct. at 2466 (Burger, C.J., concurring) (fourteenth amendment criteria rather than the "deliberate indifference" eighth amendment standard applies to § 1983 action asserted on behalf of mentally retarded patient involuntarily committed to a state hospital); *Ingraham v. Wright,* 430 U.S. 651, 664, 97

6. Va.Code §§ 8.01–581.2, –581.3.

7. *Id.* § 8.01–581.4 to –581.6.

8. *Id.* § 8.01–581.7 to –581.8.

9. In *DiAntonio,* the plaintiff failed to avail himself of the Act by giving the required notice.

The district court consequently dismissed his suit filed in the federal district court.

10. The court decides this motion without oral argument, finding that oral argument would not aid the court in the disposition of this motion.

S.Ct. 1401, 1406, 51 L.Ed.2d 711 (1977) (eighth amendment designed to protect those convicted of crimes); *Gann v. Delaware State Hospital*, 543 F.Supp. 268, 272 (D.Del.1982) (eighth amendment not applicable to patient in mental institution).[11]

Nevertheless, while the eighth amendment claim must be dismissed, this is a hollow victory for the defendants. As the Court stated in *Youngberg*, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." 457 U.S. at 321–22, 102 S.Ct. at 2461.

## IV. *Conclusion*

Defendant Western State Hospital's motion for summary judgment shall be granted. The motions to dismiss asserted by defendants Burns, Yank, and Grey shall be denied on the exhaustion ground and granted on the eighth amendment ground. The court declines to reconsider its earlier order denying the motion to dismiss of defendants Burns, Yank, and Grey in their individual capacities on immunity grounds. An appropriate Order shall this day issue.

11. The court considers that the dictum in *United States v. Solomon*, 563 F.2d 1121, 1124 (4th Cir.1977), stating that "in a proper case the protections of the Eighth ... Amendment[ ] extend to the mentally retarded who are involuntarily confined", has been essentially overruled in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).