Darrell Evans DUDLEY, Jr. Plaintiff,

v.

**FOOD SERVICE–JUST CARE; CTA
Just Care; Columbia Care Center
Management, Defendants.**

C.A. No. 0:06–1144–PMD–BM.

United States District Court,
D. South Carolina.

July 5, 2007.

Darrell Evans Dudley, Jr., Columbia, SC, pro se.

William Curry Mcdow, Richardson Plowden Carpenter and Robinson, Columbia, SC, for Defendants.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon the Magistrate Judge's recommendation that

Defendant Just Care, Inc.'s ("Defendant" or "Just Care") Motion for Summary Judgment be granted.[1] The Record contains a Report and Recommendation ("R & R") of a United States Magistrate Judge which was made in accordance with 28 U.S.C. § 636(b)(1). A dissatisfied party may object, in writing, to an R & R within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Plaintiff Darrell Evans Dudley, Jr. ("Plaintiff" or "Dudley") filed timely objections to the R & R.

### BACKGROUND

In April of 2006, Plaintiff, a committee of the South Carolina Department of Mental Health housed at the Columbia Care Center in Columbia, South Carolina, brought suit pursuant to 42 U.S.C. § 1983 against Just Care, alleging negligent food service and poor treatment. (R & R at 1–2.) Specifically, Plaintiff claims that Just Care's food service staff prepares "food that is poorly cooked and sometimes completely inedible and all the food they serve causes high cholesterol." (Compl. at 3.) Dudley also alleges Just Care's employees "have very bad attitudes and mistreat me and the other patients." (Compl. at 3.) In Dudley's subsequent objections to the R & R ("Objections"), he also claims that he has experienced "drastic change in weight" as a result of the food served at Columbia Care Center. (Objections at 2.)

Defendant moved for summary judgment on October 19, 2006 pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that there is no genuine issue of material fact and that Plaintiff, as a matter of law, has no cognizable claim under any theory of negligence pursuant to 42 U.S.C. § 1983. (Mot. for Summ. J. at 1.) Defendant asserts it is entitled to summary judgment for the following reasons: (1) the alleged negligence of independent contractors cannot be imputed to it;[2] (2) Plaintiff failed

---

1. The Defendants listed in Plaintiff's Complaint are Food Service–Just Care, CTA–Just Care, and Columbia Care Center Management. However, the Answer states that Just Care, Inc. is "incorrectly identified as Food Service–Just Care, CTA–Just Care, and Columbia Care Center–Management." (Ans. at 1.) In its Motion for Summary Judgment, Just Care again states that it has been incorrectly identified. Plaintiff does not dispute Just Care's assertion that it has been incorrectly identified. Thus, the court will treat the Motion for Summary Judgment as having been filed by all defendants and will hereinafter simply refer to Defendant Just Care.

2. According to Defendant, "[a]ny injuries Dudley may have suffered from eating the food served at the [Columbia Care] Center could only have resulted from the actions and negligence of ABL Management, Inc., the Center's food provider. Any injuries Dudley may have suffered as a result of negligent medical care could only have incurred from the actions of Dr. Scott, an employee of the South Carolina Department of Mental

Health." (Mem. in Supp. of Mot. for Summ. J. at 4–5.)

Defendant attaches the affidavit of Eldon Wyatt to its Motion for Summary Judgment. Mr. Wyatt is the General Manager for Just Care, and his affidavit states,

6. Just Care and [Department of Mental Health ("DMH")] entered into a contract in which DMH agreed to lease the Center's premises to Just Care as well as provide physicians for the Center in exchange for Just Care providing nursing and staff services at the facility.

7. While Just Care provides certain services given at the center, it only provides limited food services and only limited doctor services to detainees; ABL Management, Inc. provides food services at the Columbia Care Center and the South Carolina Department of Mental Health provides the doctor care at issue in this case.

8. Just Care does not serve food to detainees. Just Care simply follows physician orders; ABL actually prepares and serves the food.

9. Under their contract, ABL Management agreed to provide food services at the Co-

to exhaust his administrative remedies; (3) Plaintiff's § 1983 claim fails because he does not specify a particular person who has deprived him of his constitutional rights; (4) Defendant is a privately managed detention center, and its employees do not act under color of state law; (5) Plaintiff cannot meet the requisite deliberate indifference burden; and (6) Plaintiff is not entitled to recover damages for emotional suffering pursuant to § 1983. (*See* Mem. in Supp. of Mot. for Summ. J.)

The Magistrate Judge issued an R & R on March 8, 2007, recommending that Defendant's Motion for Summary Judgment be granted. Magistrate Judge Marchant recommended dismissal for three reasons. First, plaintiffs seeking redress for federal constitutional violations by persons acting under color of state law (§ 1983 causes of action) may not sue inanimate buildings such as jails or detention facilities. *See, e.g., Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit"). Second, plaintiffs in § 1983 actions may not subject to suit "collective characterizations such as 'management' or 'staff'" (R & R 6.) *See Sims v. Med. Staff of Cook County D.O.D.*, No. 94 C 1971, 1994 WL 687496, at *1 (N.D.Ill. Dec.8, 1994). Third, assuming Plaintiff named a proper defendant and the merits of his claim were before the court, summary judgment is appropriate because "Plaintiff has failed to present sufficient evidence to this Court to give rise to a genuine issue of fact as to whether his constitutional rights have been violated." (R & R at 6–7.)

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.1990).

### B. Magistrate Judge's R & R

This court makes a *de novo* determination of any portion of a Magistrate Judge's R & R to which a specific objection is registered. The court may accept, reject, or modify, in whole or in part, the recommendations contained in the R & R. 28 U.S.C. § 636(b)(1). After a review of the record, the R & R, and Plaintiff's objec-

---

lumbia Care Center with only limited supervision and little assistance to Just Care. ABL makes most decisions about food selection, nutrition, diet, and any other factors that may relate to food service at the Center.
(Wyatt Aff. ¶¶ 6–9.) Also attached to the Motion for Summary Judgment is the affidavit of

William Miles, M.D., a physician employed by Just Care. (Miles Aff. ¶ 3.) He states, "I have reviewed the affidavit of Eldon Wyatt and agree with the statements he has made regarding Just Care and the care it provides at the Columbia Care Center." (Miles Aff. ¶ 7.)

tions, the court finds the Magistrate Judge fairly and accurately summarized the facts. However, because the Magistrate Judge applied the "deliberate indifference" standard, the court modifies the R & R.

### *ANALYSIS*

While the court has some difficulty understanding Plaintiff's arguments, the court reads his objections broadly to find three objections to the R & R. First, Plaintiff asserts that he exhausted his administrative remedies. Second, Plaintiff asserts the Magistrate Judge erred in determining that Plaintiff could not bring his § 1983 suit against Columbia Care Center or its management. Third, Plaintiff objects to the Magistrate Judge's determination that Plaintiff failed to present sufficient evidence to give rise to a genuine issue of fact as to whether his constitutional rights have been violated.[3]

██ As the Magistrate Judge noted in the R & R, Plaintiff is a *pro se* litigant, whose pleadings are construed liberally. *Ali v. Darlington County Det. Ctr.*, No. 6:06–1846HMH, 2006 WL 2228873, at *1 (D.S.C. June 28, 2006) (citing *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). However, "[t]he requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in the federal district court." *Ali*, 2006 WL 2228873, at *1 (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir.1990)).

██ Plaintiff's Complaint does not specify which constitutionally-guaranteed protection he alleges has been violated, and it seems the Magistrate Judge evaluated Plaintiff's claims under the Eighth Amendment. The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Although Plaintiff is housed at the Columbia Care Center, he is not being held there as a prisoner. Instead, Plaintiff was involuntarily committed to this facility because he was found to be mentally ill. (*See* Def.'s Mot. for Summ. J. Ex. 7.)[4] "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Herer v. Burns*, 577 F.Supp. 762, 765 (W.D.Va.1984) ("Although cases construing the eighth amendment may provide useful analogies in dealing with allegations of deprivations of due process, the amendment itself only applies to punishment imposed after conviction of a crime."). Because Plaintiff is not a prisoner, the court does not analyze

---

**3.** While Plaintiff argues that he exhausted his administrative remedies, the court does not address this argument, as the Magistrate Judge made no determination regarding exhaustion. Rather, the Magistrate Judge merely noted that Defendant argued summary judgment was proper because Plaintiff had not exhausted his administrative remedies. (R & R at 6.) The court likewise does not discuss Plaintiff's objection to the Magistrate Judge's determination that Plaintiff cannot bring a § 1983 suit against Columbia Care Center or its management, as the court finds the third objection determinative.

**4.** It appears Plaintiff was committed after Charleston County entered a *nolle prosequi* on his criminal indictment for assault and battery of a high and aggravated nature. (*See* Mot. for Summ. J. Exs. 1, 7.) These charges arose out of an incident in which Plaintiff struck a fellow patient with a chair at the Medical University of South Carolina. (*See* Mot. for Summ. J. Ex. 2.)

his claim under the Eighth Amendment; the appropriate standard is found by examining *Youngberg.*

In *Youngberg,* the respondent was retarded and unable to care for himself, and he was involuntarily committed to a mental hospital. *Youngberg,* 457 U.S. at 309–10, 102 S.Ct. 2452. Because he had been injured in the course of his confinement, respondent brought suit pursuant to 42 U.S.C. § 1983 against three of the institution's administrators. *Id.* at 309, 102 S.Ct. 2452. The complaint alleged the administrators violated his rights under the Eighth and Fourteenth Amendments, but the Third Circuit held the Eighth Amendment "was not an appropriate source for determining the rights of the involuntarily committed." *Id.* at 310, 312, 102 S.Ct. 2452.

The Supreme Court began its analysis by noting "[t]he mere fact that Romeo has been committed under proper procedures does not deprive him of all substantive liberty interests under the Fourteenth Amendment." *Id.* at 315, 102 S.Ct. 2452 (citing *Vitek v. Jones,* 445 U.S. 480, 491–94, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)). The State conceded, and the Court found, the respondent had a right to adequate food, shelter, clothing, and medical care. *Id.* at 315, 324, 102 S.Ct. 2452. The Court stated, "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Id.* at 320, 102 S.Ct. 2452 (quoting *Poe v. Ullman,* 367 U.S. 497, 542, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting)). The Court provided a standard for evaluating that balance:

> We think the standard articulated by Chief Judge Seitz affords the necessary guidance and reflects the proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made. Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish. At the same time, this standard is lower than the "compelling" or "substantial" necessity tests the Court of Appeals would require a State to meet to justify use of restraints or conditions of less than absolute safety.

*Id.* at 321–22, 102 S.Ct. 2452 (internal quotation marks and citations omitted). The Supreme Court concluded the jury was improperly instructed that the proper standard of liability was the Eighth Amendment, and the Court remanded the case for further proceedings. *Id.* at 325, 102 S.Ct. 2452. The Court stated,

> Respondent thus enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests. Such conditions of confinement would comport fully with the purpose of respondent's commitment. In determining whether the State has met its obligations in these respects, decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type-often, unfortunately, overcrowded and understaffed-to continue to function. A single professional may have to make

decisions with respect to a number of residents with widely varying needs and problems in the course of a normal day. The administrators, and particularly professional personnel, should not be required to make each decision in the shadow of an action for damages.

*Id.* at 324–25, 102 S.Ct. 2452 (citations omitted).

The Fourth Circuit has held that "denial-of-medical-care claims asserted by involuntarily committed psychiatric patients must be measured under *Youngberg's* 'professional judgment' standard." *Patten v. Nichols,* 274 F.3d 829, 842 (4th Cir.2001). In that case, a psychiatric patient ("Maura") died while she was involuntarily committed to Virginia's Western State Hospital, and a representative of the patient's estate brought a § 1983 claim against the patient's doctor ("Nichols") and her social worker ("Frinks"). *Id.* at 831. The district court granted summary judgment to the defendants, concluding the estate "failed to forecast evidence sufficient to show that the defendants' conduct violated" the deliberate indifference standard. *Id.* Although the Fourth Circuit held the *Youngberg* standard, not the deliberate indifference standard, governed, the court affirmed because summary judgment was proper even under the *Youngberg* standard. *Id.*

The Fourth Circuit noted that "liability under the due process clause cannot be imposed for mere negligence, a principle reflected in the professional judgment standard's requirement of a substantial departure from accepted professional judgment." *Id.* at 843 (internal quotation marks and citation omitted). Construing all the evidence in favor of the estate, the court could not "conclude that the Estate's evidence demonstrates that the defendants failed to exercise professional judgment":

When Frinks learned of Maura's phone call and the family's concern about Maura's breathing problems, she took that information seriously enough to immediately inform Nichols about it. Nichols likewise took the information seriously enough to seek out Maura so that he could evaluate the situation. They spoke to Maura for ten minutes or more, from a distance of a few feet away. According to the testimony of the defendants, Maura explained her "dying" telephone call as simply a way to get her family involved in her campaign to be taken off clozapine. The defendants were well acquainted with Maura's physical condition and her "baseline" level of functioning, and they testified in their depositions that Maura exhibited no physical symptoms of increased respiratory problems or otherwise gave them any reason to suspect that her condition was deteriorating. Thus, the evidence establishes that the defendants in fact took immediate action when they learned of Maura's phone call and that, after talking to Maura and observing and evaluating her, the defendants were satisfied that Maura was not in danger. While the defendants' belief might have turned out to have been wrong, their actions nonetheless exhibited both professional concern and judgment and therefore were sufficient to satisfy the requirements of *Youngberg.*

*Id.* at 843–44. The court noted that if this action were an action for medical malpractice, the estate's evidence would likely have been sufficient to withstand a motion for summary judgment. *Id.* at 845. However,

[E]vidence establishing mere departures from the applicable standard of care is insufficient to show a constitutional violation; *Youngberg* requires that the evidence show "such a *substantial* departure from accepted profes-

sional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."

*Id.* (quoting *Youngberg*, 457 U.S. at 323, 102 S.Ct. 2452).

■ Although different from *Youngberg* in that the case *sub judice* involves food and nutrition rather than safety, and different from *Patten* because *Patten* involved the denial of medical care, because Plaintiff is not a prisoner or a pre-trial detainee, the court finds the standards of *Youngberg* applicable.[5] Pursuant to *Youngberg*, Plaintiff's Verified Complaint cannot withstand Defendant's Motion for Summary Judgment. Plaintiff alleges that the food "is poorly cooked and sometimes completely inedible" and "causes high cholesterol." (Compl. at 3.) Although not noted in his Complaint (but noted in his Objections), Plaintiff also complains that the food is so unhealthy that he is gaining weight even though he only eats two meals a day. (Objections at 1.)[6]

Despite Plaintiff's allegations, the undisputed evidence shows that Defendant and those caring for Plaintiff are attempting to regulate Plaintiff's cholesterol and weight. On January 8, 2006, Dr. Scott, an employee of the South Carolina Department of Mental Health, ordered Plaintiff undergo a lipid profile and a test for fasting blood glucose. (Def.'s Mot. for Summ. J. Ex.

14.) Furthermore, on June 14, 2006, Dr. Scott ordered Plaintiff undergo a lipid panel and a test for fasting blood glucose. (Def.'s Mot. for Summ. J. at 13.) Treatment Team Review Notes dated June 20, 2006 indicate Plaintiff's lipids were being controlled with Zocor. (Def.'s Mot. for Summ. J. Ex. 8.) The staff has also attempted to help Plaintiff regulate his weight. Treatment Team Progress Notes dated January 31, 2006 indicate the staff spoke with Plaintiff about the need to exercise more and eat less. (Def.'s Mot. for Summ. J. Ex. 9.) Notes dated April 25, 2006 indicate Plaintiff gained three pounds that month, and although the staff continued to attempt to motivate Plaintiff to exercise and walk, he "continues to enjoy movies, magazines and reading." (Def.'s Mot. for Summ. J. Ex. 10.) The staff has also made adjustments to Plaintiff's diet as a result of his concerns. When he was admitted to the facility, Plaintiff indicated he ate a regular diet, consisting of three meals a day. (Def.'s Mot. for Summ. J. Ex. 12.) However, when Plaintiff expressed his concern "about his dietary options" on May 23, 2006, Treatment Team Review Notes indicated he was "already on the heart and healthy diet." (Def.'s Mot. for Summ. J. Ex. 8.)

Reviewing this undisputed evidence, the court determines Defendant has satisfied the professional judgment standard articulated in *Youngberg*. Although Plaintiff

---

**5.** As the *Youngberg* Court noted, those involuntarily committed "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321–22, 102 S.Ct. 2452. The Tenth Circuit has expressed doubt regarding whether "there is much difference" between the deliberate indifference standard and the *Youngberg* standard. *See Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 894 (10th Cir.1992). However, the professional judgment standard "is at least co-extensive with deliberate indifference."

*Kollyns v. Gintoli*, No. 3:04–2322–JFA, 2006 WL 2706962, at *6 n. 7 (D.S.C. Sept.15, 2006). Because the court concludes Plaintiff cannot survive summary judgment under the professional judgment standard, Plaintiff would not survive summary judgment pursuant to the deliberate indifference standard.

**6.** In his Objections, Plaintiff states that when he was admitted, he weighed only 174 pounds and that he now weighs 260 pounds. (Objections at 1.)

may have gained weight during his stay at Columbia Care Center, such a fact does not necessarily constitute a constitutional violation. Defendant and the staff at the Columbia Care Center put Plaintiff on a heart and healthy diet, gave Plaintiff advice about how to control his weight, and have prescribed medication to help control Plaintiff's cholesterol. The court thus finds the undisputed evidence reveals the Defendant exhibited both professional concern and judgment sufficient to satisfy the requirements of *Youngberg*.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Just Care, Inc.'s Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**