ESTATE OF Oscar T. EMMONS, Jr., et al., Plaintiffs,

v.

Melodie PEET, et al., Defendants.

Civil No. 95–143–P.

United States District Court, D. Maine.

Dec. 30, 1996.

Eric M. Mehnert, Hawkes & Mehnert, Augusta, ME, for Plaintiffs.

Peter J. Brann, Attorney Generals Office, Augusta, ME, for State Defendants.

James G. Goggin, Verrill & Dana, Portland, ME, for Defendant Rohm.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge

Plaintiffs, the Estate of Oscar T. Emmons, Jr., through its Personal Representative, Cathy Gerrish, and individual relatives of the deceased Mr. Emmons,[1] sue Defendants, Dr. Walter Rohm, a licensed physician who treats patients at the Augusta Mental Health Institute, and various state officials (collectively referred to as State Defendants),[2] for

---

1. The additional Plaintiffs in this action are Cathy Gerrish, Deborah Bilodeau, Patricia Emmons Julier, and Albert Emmons.

2. The State Defendants are Melodie Peet, Commissioner of the State of Maine and the Maine Department of Mental Health and Mental Retardation, Kevin Concannon, Commissioner of the State of Maine and the Maine Department of Mental Health and Mental Retardation, Linda

Breslin, Superintendent of the Augusta Mental Health Institute, Richard Hanley, Chief Executive Officer of the Augusta Mental Health Institute, Ulrich Jacobsohn, Director of the State of Maine Forensic Services, Carroll Ayer, Administrator of the Augusta Mental Health Institute, and Gloria Weisheit, a nurse employed at the Augusta Mental Health Institute. Plaintiffs dismissed with prejudice their claims against Jane Shaheen and Susan Davenport on December 12,

damages resulting from Mr. Emmons's death while he was a patient at the Augusta Mental Health Institute. The gravamen of Plaintiffs' Complaint is that Defendants violated Emmons's substantive due process right to receive adequate medical care and consequently are liable for damages pursuant to 42 U.S.C. § 1983.[3] Defendant Rohm and the State Defendants filed separate Motions for Summary Judgment as to all claims on March 5, 1996, and March 11, 1996, respectively.[4] For the reasons set forth below, the Court grants State Defendants' and Defendant Rohm's Motions for Summary Judgment as to Counts I, II, III, VI, and VII and dismisses without prejudice Plaintiffs' claims as set forth in Counts IV, V, and VIII.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

On Sunday, May 2, 1993, Oscar Emmons, Jr. was involuntarily admitted to the Augusta

Mental Health Institute (AMHI). Defendants Dr. Rohm and Gloria Weisheit, a charge nurse at AMHI, examined Emmons that morning. Dr. Rohm asked Emmons if he ever had thoughts of harming himself. Emmons answered that he had. When asked how, Emmons explained that he thought of walking into a lake and drowning himself. Weisheit then asked Emmons if he ever had attempted to commit suicide. Emmons stated that he had not.

It is undisputed that Emmons remained an involuntary patient through Thursday, May 6. Defendants contend, however, that on Friday, May 7, Emmons became a voluntary patient because the chief administrative officer at AMHI did not, pursuant to Maine statutory law, apply to the Maine District Court to maintain Emmons as an involuntary patient. Plaintiffs argue that the chief administrative officer at AMHI was not required to file such an application until the following Monday, May 10, 1993. Until that date, Plaintiffs submit, Emmons was an involuntary patient.

On the weekend of May 8–9, Emmons's treating team physician placed Emmons on fifteen minute on-ward checks. Weisheit recommended to Dr. Rohm on May 9, 1993, that, notwithstanding the treatment team's orders, Emmons should be given unsupervised off-ward privileges with one hour checks. Dr. Rohm agreed. Weisheit led Emmons outside the AMHI grounds. Emmons walked away and later was found dead in the Kennebec River, where he apparently had drowned himself.

The Court will address Plaintiffs' claims in turn.

---

1995, and against Kathy Guilbault and Warren Maxim on January 11, 1996.

3. Specifically, Plaintiffs sued Defendants for the following: (Count I) violations of Emmons's civil rights pursuant to 42 U.S.C. § 1983, (Count II) punitive damages for violations of Emmons's civil rights and violations of Emmons's procedural due process rights, (Count III) conspiracy to violate Emmons's civil rights and to cover up a violation of Emmons's civil rights, (Count IV) intentional infliction of emotional distress, (Count V) negligent infliction of emotional distress, (Count VI) violations of Emmons's procedural due process rights pursuant to 34–B

M.R.S.A. § 3803(2), (Count VII) violations of Emmons's procedural due process rights pursuant to the Consent Decree entered in *Bates v. Glover* (Kennebec Cty., Doc. No. 89–cv–88), and (Count VIII) negligence and wrongful death.

4. The State Defendants and Defendant Rohm each previously filed two motions for partial summary judgment that were not resolved by the Court. They adopted and incorporated by reference their prior summary judgment motions pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

## III.  EMMONS'S FEDERAL CIVIL RIGHTS

Plaintiffs claim in Count I that Defendants violated Emmons's substantive due process right to receive adequate medical care pursuant to the Fourteenth Amendment and his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment.

The Court holds that Emmons's Eighth Amendment claim is groundless. "[T]he Eighth Amendment itself applies only to punishment imposed after conviction of a crime." *Gann v. Delaware State Hosp.*, 543 F.Supp. 268, 272 (D.Del.1982).  Emmons was a patient in a mental institution rather than a convicted inmate.  Rohm's and the State Defendants' Motions for Summary Judgment as to Plaintiffs' Eighth Amendment claim in Count I are granted.

The Court next must decide whether Emmons had a substantive due process right to adequate medical care.  The Court holds that he did not.  In *Youngberg v. Romeo*, 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982), the Supreme Court held that an involuntarily committed mental patient enjoys "constitutionally protected interests in conditions of reasonable care and safety, ... and such training as may be required by these interests."  The Court held that these rights flow from the Fourteenth Amendment's Due Process Clause.  In *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court further explained the source and extent of these rights.  The Court wrote that for substantive due process purposes, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause...."  *Id.* at 200, 109 S.Ct. at 1006.  For Emmons to have had the substantive due process right to receive adequate medical care, therefore, he must have been an involuntary patient at AMHI who would have been barred from leaving AMHI upon request.

The Court holds that although Emmons was admitted as an involuntary patient on May 2, 1993, he was a voluntary patient on May 9, 1993, the date he apparently drowned himself after being given an unsupervised off-ward pass.  Emmons was admitted to AMHI pursuant to 34–B M.R.S.A. § 3863.  In order to continue Emmons's hospitalization on an involuntary basis, the chief administrative officer of AMHI was required to file an application with the Maine District Court within five days from the admission of the patient, excluding the day of admission, weekends, and legal holidays.  34–B M.R.S.A. § 3863(5)(B).  Plaintiffs argue that since Emmons was admitted on a Sunday, the first day of the five-day period did not commence until 12:01 am Monday morning.  Plaintiffs further claim that since a day is a twenty-four hour period, the first day of the five-day period did not end until 12:01 am Tuesday morning.  Plaintiffs follow this theory to its logical conclusion, where the end of the fifth day would seem to occur at 12:01 am Saturday morning.  Since the statute excludes weekends from the five-day period, however, Plaintiffs contend that Emmons was an involuntary patient on Saturday, May 8, 1993, and would not have become a voluntary patient until 12:01 am on the following Monday morning, May 10, 1993, eight days after he was initially admitted at AMHI.  Plaintiffs conclude that when Emmons left the AMHI campus on Sunday, May 9, 1993, he was an involuntary patient.

The Court is not persuaded by Plaintiffs' interpretation.  May 2, 1993, was a Sunday.  For purposes of the statute, the first day of the five-day period was Monday.  The second day was Tuesday.  The third day was Wednesday.  The fourth day was Thursday.  The fifth day was Friday.  In order to maintain Emmons as an involuntary patient, the chief administrative officer had to file an application with the Maine District Court by Friday at the latest.  He did not.  Accordingly, Emmons became a voluntary patient at AMHI on Friday, May 7, 1993, and remained a voluntary patient when he left the AMHI campus on Sunday, May 9, 1993.  Under *Youngberg* and *DeShaney*, Emmons did not have a substantive due process right to re-

ceive adequate medical care on Sunday, May 9, 1993.

▆ Plaintiffs argue in the alternative that even if Emmons was no longer an involuntary patient on May 9, 1993, he was a de facto involuntary ward of the State who possessed the substantive due process right to receive adequate medical care. Emmons may have been entitled to leave AMHI upon request, Plaintiffs contend, but he was unaware of this right due to his mental illness and consequently was confined in fact to AMHI as if he were an involuntary patient. The First Circuit addressed, and rejected, this same argument in *Monahan v. Dorchester Counseling Center, Inc.*, 961 F.2d 987 (1st Cir.1992). The Court held that "where it was Monahan's own mental condition alone that impinged upon his freedom to leave, ... the *Constitution* did not impose upon [the State] any responsibility for his safety and well-being." *Id.* at 992 (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). For substantive due process purposes, Emmons's awareness of his voluntary status or his ability to understand the nature of his voluntary status are irrelevant.

Plaintiffs' reliance on *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), is misplaced. In *Zinermon* the Court held that a mental hospital's admission procedures were constitutionally deficient. The Court wrote, "Indeed, the very nature of mental illness makes it foreseeable that a person needing mental health care will be unable to understand any proffered 'explanation and disclosure of the subject matter' of the forms that person is asked to sign, and will be unable 'to make a knowing and willful decision' whether to consent to admission." *Id.* at 133, 110 S.Ct. at 987. Nevertheless, the First Circuit already has considered the applicability of *Zinermon* in a case similar to this one and decided that it was inapposite. In *Monahan v. Dorchester Counseling Cen-*

ter, Inc., 961 F.2d 987, 992 (1st Cir.1992), the court held: "*Zinermon*, however, dealt with the procedural adequacy of a mental patient's 'informed consent' to voluntary treatment. It did not suggest that a voluntarily committed patient would gain constitutional as well as tort remedies for negligent harm done by state caretakers." Since Emmons was a voluntary patient when he was given an unsupervised off-ward pass, and since Plaintiffs' claims are for substantive, rather than procedural, due process violations, *Zinermon* is not determinative.

Plaintiffs argue that Emmons was a de facto involuntary patient on Sunday, May 9, 1993, because he would not have been permitted to leave AMHI upon request, notwithstanding his alleged voluntary status. The Court is aware of the fact that there may be some circumstances when a patient is labeled voluntary for administrative purposes but is in fact involuntary by virtue of his inability to leave the hospital upon request. *See Bushey v. Derboven*, 946 F.Supp. 96 (D.Me.1996). Plaintiffs, however, have not raised sufficient facts from which a reasonable factfinder could determine that Emmons was not free to leave AMHI upon request.

The Court grants Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Count I.[5]

## IV. PROCEDURAL DUE PROCESS CLAIMS

In addition to their substantive due process claim, Plaintiffs argue that Defendants violated Emmons's Fourteenth Amendment procedural due process rights by failing to provide Emmons with "humane care and treatment" pursuant to 34–B M.R.S.A. § 3803(2) and by failing to abide by the Consent Decree entered in *Bates v. Glover* (Kennebec Cty., Doc. No. 89–cv–88) (AMHI Consent Decree) (Counts VI and VII). The Court rejects Plaintiffs' claims and grants

---

5. Accordingly, the Court also grants Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Plaintiffs' claim for punitive damages for violations of Emmons's right to receive adequate medical care (Count II) and Plaintiffs' claim of a conspiracy to violate Emmons's civil rights and to cover up a violation

of Emmons's civil rights (Count III). *See Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980) ("While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws.").

Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Counts VI and VII.

■ Maine statutory law provides that "[e]very patient is *entitled* to humane care and treatment...." 34-B M.R.S.A. 3803(2) (emphasis added). Similarly, the AMHI Consent Decree states that "Defendants *shall* take administrative action necessary to assure that the Regulations entitled "Rights of Recipients of Mental Health Services" ... are applied to all facilities providing in-patient psychiatric services...." *Bates* at 121 (emphasis added). In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.... He must, instead, have a legitimate claim of entitlement to it." Plaintiffs argue that the laws and judgments of the State of Maine do in fact give Emmons a legitimate claim of entitlement to adequate health care while he was a patient at AMHI, regardless of his voluntary or involuntary status. They contend that under *Roth* Emmons had a property interest that, pursuant to the Fourteenth Amendment, could not be taken away without due process. Plaintiffs cite § 1983 as the basis of their cause of action.

*Roth* heretofore has been used only in the context of property rights, *see e.g., Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and not rights relating to protection from physical harm. The Court "fail[s] to intuit how *Roth* supports [Plaintiffs'] claim that [Emmons] had an entitlement ... to be protected in his physical person." *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir.1995). Moreover, "the remedial framework contemplated by *Roth*—procedural due process, principally in the form of notice and a hearing—has no applicability at all to [Plaintiffs'] remonstrance." *Id.* at 990 (citation omitted). Regardless of how Plaintiffs ask the Court to examine their assertion that Emmons had a right to receive adequate medical care, the Court is persuaded that

Plaintiffs' claim is grounded in substantive due process rights and not procedural due process rights. *See id.* Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Plaintiffs' claims for procedural due process violations (Counts VI and VII) are granted.[6]

## V. STATE TORT CLAIMS

Plaintiffs' remaining claims are based in state tort law. They allege Defendants are liable for intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), and negligence and wrongful death (Count VIII). The Court dismisses without prejudice these supplemental state law claims. *See Astrowsky v. First Portland Mortgage Corp.*, 887 F.Supp. 332, 337 (D.Me.1995).

## VI. CONCLUSION

Emmons was a voluntary patient on Sunday, May 9, 1993, when he left the AMHI grounds and apparently drowned himself after being given an unsupervised off-ward pass. Emmons's mental condition and inability to understand his voluntary status did not make him a de facto involuntary patient. Further, a reasonable factfinder could not find that Emmons would have been barred from leaving AMHI upon request. Accordingly, Emmons did not have a substantive due process right to receive adequate medical care when he left the AMHI campus. Emmons also did not have an Eighth Amendment right to be free from cruel and unusual punishment because he was a patient in a mental institution rather than a convicted inmate. Because there is no underlying constitutional violation, Plaintiff's claim of a conspiracy to violate Emmons's civil rights and to cover up a violation of Emmons's civil rights is without merit.

Emmons did not have a property right to be free from physical harm. Plaintiffs' claims are, despite Plaintiffs' protestations to the contrary, for substantive due process violations and not for procedural due process violations. Consequently, Plaintiffs' argu-

---

6. Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Plaintiffs' separate claim for punitive damages relating to

Defendants' alleged violation of Emmons's procedural due process rights (Count II) also are granted.

ment that Defendants violated Emmons's procedural due process rights is groundless.

The Court grants Defendant Rohm's and the State Defendants' Motions for Summary Judgment as to Counts I, II, III, VI, and VII.

The Court dismisses without prejudice Plaintiffs' supplemental state law claims for intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), and negligence and wrongful death (Count VIII).

*SO ORDERED.*