**Jason DAVIS, Plaintiff,**

v.

**Paul RENNIE, Louis Valentine, Richard Gillis, Michael Hanlon, Jeffrey Flowers, Leonard Fitzpatrick, Nicholas L. Tassone, Frantz Joseph, Phillip Bragg, Joyce Weigers, Edward M. Murphy, Eileen P. Elias, Alan J. Zampini, Alfred Chaput, Defendants.**

**No. 96–CV–11598–MEL.**

United States District Court,
D. Massachusetts.

Feb. 25, 1998.

Christopher M. Perry, Brendan J. Perry, Terance P. Perry, Brendan J. Perry & Associates, PC, Holliston, MA, for Plaintiff.

Richard H. Spicer, Robert Patten, Attorney General's Office, Boston, MA, David Ricciardone, Worcester, MA, Gerald E. Shugrue, Shugrue & Pendergast, Whitinsville, MA, for Defendants.

### MEMORANDUM AND ORDER

LASKER, District Judge.

On May 12, 1993, Jason Davis was discharged from McLean Hospital and transferred to Westborough State Hospital. On August 12, 1993, while a patient at Westborough, Davis alleges that he was severely beaten by one or more members of the staff at Westborough. He brings this action, under 42 U.S.C. §§ 1983 and 1985, and several related Massachusetts statutes and the Massachusetts Common Law, against those whom he alleged to have beaten him or to

have failed to prevent others from doing so, or who were allegedly legally responsible for supervision of the assailants. He contends that his case falls within the parameters of the Supreme Court decisions in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) and *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

Relying on *DeShaney v. Winnebago County Social Services Department,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the defendants contend that Davis was voluntarily admitted to the Westborough Hospital and that, accordingly, he had no constitutional right to protection by the state against violence. Various defendants also assert that each of them is qualifiedly immune in connection with the actions of August 12, 1993.

The plaintiff has moved for summary judgment declaring that he was at all times an involuntarily admitted patient at Westborough and that none of the defendants was qualifiedly immune. The motion is granted as to a declaration that Davis was an involuntarily admitted patient at Westborough Hospital but is denied as to a declaration that none of the defendants is qualifiedly immune.

Most of the defendants have filed cross-motions for summary judgment declaring that Davis was admitted to Westborough voluntarily. Defendants Eileen P. Elias, Edward M. Murphy and Alan J. Zampini also seek a declaration that they are entitled to qualified immunity. Several of the defendants (unspecified in their joint motion) also ask that this court dismiss the claims against them because plaintiff was unable to personally identify them as present during the events of August 12, 1993. The defendants' motions are denied.

## DAVIS' STATUS AS A PATIENT

■ In connection with the determination of the facts relating to Davis' admission to Westborough State Hospital and his continued stay there, plaintiff deposed Dr. Miriam C. Goodman, the physician who discharged Davis from McLean on May 12, 1993, and Benjamin F. MacDonald, M.D., the staff psychiatrist who handled Davis' admission to Westborough State Hospital the same day.

The undisputed facts elicited from these depositions follow:

## DISCHARGE FROM McLEAN

Dr. Goodman prepared a petition to have Davis involuntarily committed pursuant to M.G.L. c. 123, § 12. She found that he met the criteria of the section because he was extremely paranoid, his reality testing was grossly impaired, he suffered from various delusions, was psychotic, and his behavior was characterized by delusions and, in sum, was "acutely paranoid," "acutely psychotic" and "suffered from a gross impairment of his judgment" at the time of his discharge from McLean. At 11:30 a.m., 2½ hours before that, Davis had ingested Lithium carbonate, Tegrithol, Stelazine and Klonopin. The records relating to the facts stated above were forwarded to Westborough Hospital on the day of Davis' transfer.

## ADMISSION TO WESTBOROUGH

Benjamin F. MacDonald, M.D., was the staff psychiatrist at Westborough who handled Davis' admission. Dr. MacDonald and Davis signed a form entitled "Application for Care and Treatment on a Conditional Voluntary Basis." However, at the commencement of that form, there are typed the words "the patient refused to sign a voluntary saying 'I don't want to be here for a year.'"

MacDonald testified that at the time of Davis' admission to Westborough, Davis was psychotic, incompetent, acutely paranoid, acutely psychotic, delusional, hallucinogenic, and incapable of exercising informed consent (Plaintiff's Exhibit 6, pages 116–122). The following excerpts from MacDonald's deposition support plaintiff's contention that on May 12, 1993, Davis was legally and medically incompetent to appropriate the significance of his action in signing any admission document and that his admission to Westborough State Hospital on that day was therefore involuntary:

Q: Well, that is okay. The point is, though, Jason Davis was incompetent on May 12, 1993 when he was admitted to the Westboro State Hospital.

A: He was incompetent when this [the admission document] was written.

Q: Jason Davis was incapable of exercising informed consent on May 12, 1993 when he—

A: At the time this was written, this was written, yes.

Q: On May 12, 1993, Jason Davis was psychotic.

A: Yes.

Q: On May 12, 1993, Jason Davis was acutely paranoid?

A: Yes.

.    .    .    .    .

Q: Jason Davis was acutely paranoid?

A: Yes.

Q: Jason Davis was acutely psychotic?

A: Yes.

Q: Jason Davis, on May 12, 1993, was delusional?

A: Yes.

Q: And Jason Davis was hallucinogenic on May 12, 1993?

A: Correct.

Q: Doctor, you just testified that Jason Davis was acutely paranoid, acutely psychotic, delusional and hallucinogenic on May 12, 1993 at the time of his admission?

A: Yes.

As vivid as are the statements quoted above, they constitute only the climax of Dr. MacDonald's 121–page deposition. Nothing stated by Dr. MacDonald in his deposition is inconsistent with the conclusions quoted above. The defendants have offered no evidence in affidavit form or otherwise, to challenge or refute any of Dr. MacDonald's testimony (which is of course consistent with that of Dr. Goodman).

*THE 3–DAY LETTERS*

On May 19, June 7, July 29, and August 13, Davis executed forms which provided notification of his intent to leave the hospital within three days. He also executed retractions of each of these letters, which read "I, Jason Davis, do hereby retract my 3–day notice of intent to leave the hospital and agree to remain in the hospital on a Voluntary basis." The defendants contend that even if it be concluded that Davis' original admission to the hospital was involuntary (on May 12, 1993), he became a voluntary patient upon signing the retractions referred to above which specified that he agreed to remain in the hospital on a "Voluntary basis." However, the retraction letters are ineffective to establish that Davis' presence as a patient was thereafter "voluntary" because the retractions did not comply with the legal requirements for voluntary admission. The governing statute, M.G.L. c. 123, § 10 reads:

> Prior to accepting an application for a voluntary admission, the Superintendent shall afford the person making the application the opportunity for consultation with an attorney, or with a person who is working under the supervision of an attorney, concerning the legal effect of a voluntary admission.

Davis was never afforded an opportunity to consult with an attorney as to the effect of any of the retractions, nor did he ever do so; nor was he informed of his rights or given a copy of a notice of his rights prior to executing either the letters or the retractions (Plaintiff's Exhibit 24–15, 16, 17, 18). On the basis of the record referred to above, I conclude that no reasonable juror could decide that Jason Davis was ever a voluntarily admitted patient at Westborough State Hospital.

*THE EMMONS CASE*

Defendants contend that the decision of the United States District Court for the District of Maine in *Emmons v. Peet*, 950 F.Supp. 15 (D.Me.1996), and the decision of the Court of Appeals in *Monahan v. Dorchester Counseling Center*, 961 F.2d 987 (1st Cir.1992), upon which *Emmons* relies, establish that, in circumstances such as exist here, Davis must be held to have been a voluntary patient at Westborough State Hospital from the time of his original admission of May 12, 1993.

*Emmons* committed suicide while he was a patient at the Augusta Mental Health Institute. He had been admitted to the institute involuntarily on May 2, 1993. The defendants contended, however, that on Friday, May 7, he became a voluntary patient because the chief administrative office at

AMHI did not, pursuant to Maine statutory law, apply to the district court to maintain him as an involuntary patient. The District Court held that, in the circumstances, *Emmons* did become a voluntary patient under Maine law on May 7 and that, accordingly, the plaintiffs, his heirs, or representatives had no claim under 42 U.S.C. § 1983.

Defendants' reliance on *Emmons* and *Monahan* is misplaced. Those decisions are inapplicable because the courts in those cases made no evaluation of the patients' competency at the time of their respective admissions, and gave no consideration to the potential effect of incompetency on a determination of voluntariness. In view of the testimony quoted above of Drs. Goodman and MacDonald, it is clear that, at the time of Davis' admission to Westborough, he was legally and medically incompetent and incapable of being voluntarily admitted to the hospital. Moreover, to the extent that defendants read *Emmons* to state that a patient who has not been involuntarily committed through formal procedures must be considered voluntarily admitted, their reading is inconsistent with—and, indeed, seems to invert—the holding in *Zinermon*. In *Zinermon*, the fact that a patient was incompetent to exercise informed consent as a voluntary admission demonstrated that his presence in the institution was involuntary. Defendants turn this logic upside-down by arguing that the lack of proper procedures for involuntarily committing a patient shows that his presence is voluntary.

### THE ISSUE OF QUALIFIED IMMUNITY

 Plaintiff's motion that none of the defendants is qualifiedly immune is denied, as is the motion filed by certain of the defendants seeking a declaration of their entitlement to qualified immunity. Issues of fact exist which make it impossible to establish upon documentary evidence alone just what the role of each defendant who was present at the beating may have been or what the extent of the knowledge and responsibility of the supervisory employees was with relation to the assault on Davis.

### THE DEFENDANTS' PRESENCE

The defendants' motion seeking the dismissal of the claims against those of them whom Davis did not personally identify as having been present on August 12, 1993 is denied. Plaintiff has put forth sufficient evidence to show that the assertions that these defendants were not present is a matter of material dispute. It is not necessary that Davis himself have been able to recognize and remember each defendant present while he was allegedly attacked in order to pursue his claims.

\*    \*    \*

Plaintiff's motion for summary judgment for a declaration that Davis was involuntarily committed to Westborough Hospital and remained in that status on August 12, 1993 is granted. The motion for a declaration that none of the defendants is qualifiedly immune is denied. The defendants' motions for summary judgment are denied.