Victor L. ZIGMUND, Jr.

v.

Dr. Hilliard FOSTER, et al.[1]

No. 3:97CV1989 (GLG) (JGM).

United States District Court,
D. Connecticut.

June 30, 2000.

---

1. The named defendants in the amended complaint filed on January 26, 1999, are Dr. Hilliard Foster, Dr. More, David Lewis, Sue Arnold, Dr. John Young, Donald Phelps, Dr. James Cassidy, Commissioner Albert Solnit, Garrell Mullaney, Sandy Davis and Gerry Kozman. Claims against defendants Solnit,

Mullaney and Cassidy in their official capacities for money damages were dismissed sua sponte on February 6, 1998. In addition, the court dismissed sua sponte all claims against defendants Dr. Khang, Roger Fisher, Tracy Megson, Louis Sorchiotti, Sandy Davis and Gerry Kozman. (*See* Doc. # 4.) In the amended complaint, the plaintiff was permitted to reassert his claims against defendants Davis and Kozman because he sufficiently alleged their personal involvement. (*See* Doc. # 25.)

## RULING AND ORDER

GOETTEL, District Judge.

The plaintiff filed this action *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915. He claims that the defendants, Dr. Carl Chi, Dr. John Young, Ronald Hoyte, Georgia Hutchinson, Louise Patterson and Dr. Hilliard Foster, violated his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution, the Connecticut Constitution and the Connecticut Patient's Bill of Rights, by depriving him of his radio and private room without affording him due process, confining him in seclusion and four-point restraints and interfering with his rights of free speech and access to the courts. Pending is the defendants' motion for summary judgment. For the reasons that follow, the defendants' motion is granted.

### Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must

grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum,* Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

 "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." *Greene v. Georgia Pardons & Parole Bd.,* 807 F.Supp. 748, 750 n. 5 (N.D.Ga.1992) (citing *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir.1984)). An affidavit in which the plaintiff merely restates the conclusory allegations of the complaint and denies the truth of the affidavits filed by the defendants is insufficient to create an issue of fact that would make summary judgment inappropriate. *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972). As one court has stated, to

permit such an affidavit to form the basis of denying the defendants' motion for summary judgment "would amount to permitting the plaintiff to keep [his] case in court merely by swearing that [he] has a case." *Zenith Vinyl Fabrics Corp. v. Ford Motor Co.,* 357 F.Supp. 133, 139 (E.D.Mich.1973).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

### Facts[2]

At all times relevant to this action, the plaintiff, a state aquittee subject to the jurisdiction of the Psychiatric Security Review Board, (one who was found not guilty of criminal charges by reason of lack of capacity due to mental disease or defect), resided on Unit 2 at the Whiting Forensic Division of the Connecticut Valley Hospital in Middletown, Connecticut ("Whiting"). Whiting is a maximum security facility at which the state provides treatment to patients who are mentally ill and dangerous.

Unit 2 employs the Social Learning Program, developed by defendant Dr. Foster, to encourage patients to participate in their rehabilitation. The staff uses a point system to evaluate the behavior of all patients on Unit 2. Points are awarded for positive behaviors, such as participation in mandatory and voluntary activities and deducted for negative behaviors. Points are tabulated weekly. The point total, in large

---

**2.** The facts are taken from the defendants' Local Rule 9(c)1 Statement of Uncontested Facts [doc. # 40]; the affidavits of James Cassidy, J.D., Ph.D., and Dr. Hilliard Foster with attached documents [attached to doc. # 39]; the plaintiff's declaration [doc. # 47]; the plaintiff's Local Rule 9(c)2 Statement [doc. # 49]; and the exhibits attached to the plaintiff's memorandum in opposition including the declaration of William Warren [doc. # 48].

part, determine the patient's level, ranging from 0 to 5. The system also includes a ground level, below level 0, for patients who exhibit physical violence, engage in self-destructive behavior or attempt to assault staff or other patients. The higher a patient's level, the more privileges he is afforded.[3] One such privilege is a private room. Upon attaining level 5, a patient is eligible for, but not guaranteed, a private room. Assignment to a private room is determined by a patient's rating, his behavior in the unit, room availability and unit needs.

On April 23, 1997, the plaintiff was rated at level 5. He had been afforded the privileges of assignment to a private room and more extensive use of his personal radio. At approximately 8:00 a.m. on April 24, 1997, the plaintiff noticed that legal mail he had placed in the patients' mailbox three days earlier had not been mailed. Outgoing mail is picked up by Whiting security personnel; it is not mailed by unit staff. The plaintiff engaged in a discussion with staff about the mail and then proceeded to walk to a seclusion room for a "time-out."[4] At approximately 10:30 a.m., defendants Foster and Lewis opened the door of the seclusion room and told the plaintiff that he would be restricted from using a pen for one week because he had thrown a pen at staff. In response, the plaintiff spit and stated, "this is what I think of how you treat people around here."

The plaintiff had previously been treated for Hepatitis B and Hepatitis C. Staff members consulted with psychiatrist Dr. Khorramzadeh and placed the plaintiff in four-point restraints. After approximately 45 minutes, defendant Dr. Young, another psychiatrist, spoke with the plaintiff and ordered a medicating tranquilizer to calm the plaintiff. Although the plaintiff denies

any contact with Dr. Young, progress notes reveal that Dr. Young found the plaintiff to be agitated, hitting the mattress with his head, biting the straps and using profane language. The plaintiff was removed from four-point restraints at approximately 1:40 p.m. and returned to seclusion. The plaintiff was returned to four-point restraints at 4:00 p.m. and remained there until 11:30 a.m. the following morning, when he was released and returned to seclusion. While in four-point restraints, the plaintiff was monitored by staff every fifteen minutes. The plaintiff was not checked by a physician during his second period of confinement in four-point restraints.

As a result of the spitting incident, the plaintiff's level was reduced from level 5 to ground level. He was moved from a private room into a dormitory. The plaintiff did not have the use of a personal radio in the dormitory.

On July 14, 1997, the plaintiff again attained level 5. He spoke to Dr. Young about being transferred to a private room. The request was denied. On July 23, 1997, Dr. Young informed the plaintiff that his behavior on the previous day was unacceptable. The following day, the plaintiff lost his level 5 rating. The plaintiff again attained level 5 on August 4, 1997. The plaintiff was transferred to another unit on January 14, 1998.

*Discussion*

The defendants have filed a motion for summary judgment on nine grounds: (1) the plaintiff has not alleged facts sufficient to demonstrate a deprivation of due process based on property or liberty rights under the Fourteenth Amendment because a private room and personal radio are not property rights protected by the United States Constitution and seclusion or four-

3. Although the plaintiff disputes the way his points were allocated, he does not challenge the existence or general functioning of the point system.

4. The parties dispute whether, during the discussion, the plaintiff dropped his pen or threw it in the direction of the staff member and whether he was ordered to go to the time-out room or proceeded there voluntarily.

point restraints are not conditions of confinement warranting due process protection, (2) the plaintiff is not a member of any protected class entitled to protection under the Equal Protection Clause, (3) the plaintiff has not demonstrated that his rights to free speech or of access to the courts have been violated by the defendants, (4) the plaintiff fails to state a claim under the Eighth Amendment, (5) the plaintiff fails to state a valid claim of retaliation, (6) the plaintiff fails to allege sufficient facts to show that the defendants conspired against him, (7) the defendants are entitled to qualified immunity in their individual capacities, (8) the defendants have not violated the plaintiff's rights under state law, and (9) the prior pending action doctrine bars many of the plaintiff's arguments.

■ In considering the rights of an institutionalized or hospitalized person, the courts look to the law developed in cases concerning persons confined in correctional institutions. *See Falter v. Veterans Admin.*, 632 F.Supp. 196, 204 (D.N.J.1986). *See also Buthy v. New York Comm'r of Office of Mental Health*, 818 F.2d 1046, 1050 (2d Cir.1987) (upholding restrictions imposed by forensic psychiatric center because rules were "reasonable directed at the threat to institutional security posed by the forensic unit population, a legitimate state concern"). This is particularly appropriate in the case of persons, like plaintiff, who are involuntarily confined because of criminal acts.

I. *First Amendment Claims*.

The plaintiff claims that the actions of the defendants have chilled his ability to freely express himself to friends, relatives, hospital staff and other patients. In addition, he alleges that the defendants have denied him the right to petition the government for redress of grievances.

A. *Freedom of Expression*

■ "The fact of confinement and the needs of the penal institution impose limi-

tations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). When reviewing alleged restrictions on First Amendment rights, the Supreme Court has encouraged the federal courts to use judicial restraint. "'[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)).

■ In *Turner*, the Court suggests that the appropriate standard of review is one of reasonableness. "Where a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. In determining whether a regulation is reasonable, the court considers four factors: (1) whether the objective underlying the regulation is "legitimate and neutral" and whether the regulation is "rationally related to that objective"; (2) whether the patient has alternative means of exercising the right impinged by the regulation; (3) the impact on other patients and staff of accommodating the patient's right; and (4) the absence of obvious easy alternatives. *Id.* at 90–91, 107 S.Ct. 2254.

■ Here the plaintiff alleges that he cannot freely express himself without being penalized by staff. Based upon the allegations in the amended complaint, the court assumes that the plaintiff is challenging the application of the Social Learning Program.

The defendants have attached to Dr. Foster's affidavit a description of the Social Learning Program. The program is designed to rehabilitate forensic patients by teaching them to exercise self-control. The program encompasses behavior management techniques such as identification of appropriate interpersonal behaviors, individual treatment plans addressing the specific needs of each patient while maintaining a safe and secure environment. (*See* Foster Affidavit, Attachment 1 at 4–5.)

The Social Learning Program is designed to rehabilitate forensic patients and enable them to transfer to less restrictive environments. This purpose clearly satisfies the first *Turner* factor, that objective underlying the challenged regulation be "legitimate and neutral." In addition the plan itself is "rationally related to that objective."

There is no indication in the plan that the plaintiff may not express his disagreement with the decisions of staff members. In fact, the plan specifically provides for patient involvement in individual treatment plans and identification of appropriate and inappropriate responses to daily events. Thus, as required in the second factor, the plaintiff may express his disagreement in an alternate, acceptable manner.

Accommodating the plaintiff's desire to express himself in any manner he wished would have a detrimental effect on the other Unit 2 patients. Clearly, the unit rules must be applied to all patients. Although the plaintiff states that the rules were not applied properly, he provides no evidence that any other Unit 2 patient was treated differently. Finally, the plaintiff identifies no easy alternative to the application of the Social Learning Program and the court can discern none.

Thus, under the *Turner* test, the Social Learning Program a valid restriction on the plaintiff's First Amendment rights because it is legitimately related to legitimate state interests.

### B. *Access to Court*

The plaintiff does not indicate in what way he has been precluded from petitioning the government for redress of grievances. Thus, the court construes the plaintiff's claim as a denial of access to the courts.

In *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. The Court held that to show a violation of his right of access to the courts, an inmate must allege an actual injury. *See id.* at 349, 116 S.Ct. 2174. For example, an inmate cannot simply allege that the prison law library or legal assistance program is inadequate. He must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351, 116 S.Ct. 2174. The fact that an inmate may not be able to litigate effectively once his claim is brought before the court, is insufficient to demonstrate actual injury. *See id.* at 354, 116 S.Ct. 2174. Rather, the inmate must show that he was unable to file the initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim. *See id.* at 351, 116 S.Ct. 2174.

In this case, the plaintiff concedes that he alleges no facts demonstrating an actual injury. As the defendants indicate, the plaintiff filed eight lawsuits and over seventy pleadings in federal court during the time he was assigned to Unit 2. The plaintiff has failed to present any evidence showing that he is entitled to judgment as a matter of law on his claim of denial of access to the courts.

The defendants' motion for summary judgment is granted as to the plaintiff's First Amendment claims.

## II. *Eighth Amendment Claims*

The plaintiff alleges that the actions of the defendants have subjected him to cruel and unusual punishment in violation of the Eighth Amendment. In response to the defendants' motion for summary judgment, the plaintiff acknowledges that his Eighth Amendment claim will not be argued. The court cannot discern whether the plaintiff intends to withdraw the Eighth Amendment claim by this statement.

 The defendants argue that the Eighth Amendment is not applicable to the plaintiff because he has not been convicted of a crime, At trial, the plaintiff was acquitted by reason of insanity. Although his confinement was the result of a criminal adjudication, it is not punishment. *See Payne v. Fairfield Hills Hosp.*, 215 Conn. 675, 683–84, 578 A.2d 1025, 1029 (1990). Unlike a convicted prisoner, an insanity acquittee is entitled to be released when he recovers his sanity or is no longer dangerous to society. The Supreme Court has determined that because an insanity acquittee has not been convicted of a crime, he may not be punished. *See Jones v. United States*, 463 U.S. 354, 368–69, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). Thus, the Eighth Amendment, which applies only to punishment imposed following conviction, is inapplicable. *See Barna v. Hogan*, No. 2:92cv649 (AHN) (D.Conn. Aug. 17, 1994) (Ruling on Defendants' Motion to Dismiss at 11–12) (holding that Eighth Amendment protection against cruel and unusual punishment does not apply to insanity acquittees committed to mental institutions); *see also Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir.1995) (holding that patients in psychiatric institutions are protected by the Fourteenth Amendment rather than the Eighth Amendment); *Herer v. Burns*, 577 F.Supp. 762, 766 (W.D.Va. 1984) (rejecting Eighth Amendment claims of involuntarily committed patients on ground that Eighth Amendment applies only to punishment imposed after conviction); *Gann v. Delaware State Hosp.*, 543 F.Supp. 268, 272 (D.Del.1982) (holding that Eighth Amendment is not applicable to patients in mental institutions).

The defendants' motion for summary judgment is granted as to the Eighth Amendment claims.

## III. *Due Process Claim*

The plaintiff contends that he has been deprived of protected liberty and property interest without due process because he was removed from his private room thereby being denied unlimited use of his personal radio and confined in seclusion and in four-point restraints without being afforded notice and a hearing.

 To state a due process claim, the plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was denied that interest without being afforded due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir.1996). In addition to the protected interests which originate in the Constitution itself, a constitutionally protected liberty or property interest may be found in laws enacted by the state or federal government creating a substantive entitlement to a specific government benefit. *See Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir.1984); *Najjar v. Reno*, 97 F.Supp.2d 1329, 1349 (S.D.Fla. 2000). The plaintiff bears the burden of demonstrating the existence and infringement of a protected liberty or property interest. *See Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996).

### A. *Radio and Private Room*

 The plaintiff identifies the source of his alleged property interest in a private room and radio as the Unit 2 rules. He does not provide a copy of any rules demonstrating an entitlement to a private room and use of his personal radio. The court assumes that the applicable Unit 2 rules are the requirements set forth in the Social Learning Program.

Dr. Foster states in his affidavit that patients who attain level 5 are eligible for

a private room, but that this privilege is not guaranteed. (*See* Foster Affidavit ¶ 8.) The program provides that "[p]rivate room assignments will be made by the clinical staff and may be based those patient's LOFT scores for a two week period and/or the unit needs." (Foster Affidavit Attachment 1 at 19.) Patients attaining level 2 are permitted to use a personal radio for four hours per day. (*See* Foster Affidavit Attachment 2.) If a level 5 patient is assigned to a private room, he may keep his personal radio in his room. (*See* Foster Affidavit ¶ 17.)

The plaintiff provides no evidence supporting his allegation that the unit rules create an absolute entitlement to a private room and retention of his personal radio. Thus, he fails to demonstrate that he had an interest protected by the Fourteenth Amendment.

The defendants' motion for summary judgment is granted as to the Fourteenth Amendment claims regarding a private room and use of a personal radio.

## B. *Seclusion and Four–Point Restraints*

The plaintiff also claims that the defendants violated his Fourteenth Amendment rights by placing him in seclusion and four-point restraints with first affording him due process. The plaintiff refers in his complaint to a right to treatment in the least restrictive environment. He also characterized these actions as disciplinary measures taken without any notice or disciplinary hearing.

■■■■ The Supreme Court has held that persons confined in state facilities are entitled to reasonable care and freedom from undue bodily restraint. *See Youngberg v. Romeo*, 457 U.S. 307, 319, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). The patient's rights, however, are not absolute; they must be balanced against the State interests in protecting the patients and staff from violence and in training and treating the patients. *See id.* at 319, 324,

102 S.Ct. 2452. Thus, decisions made by professionals regarding the treatment of patients are "presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. 2452. *See Bell v. Wolfish*, 441 U.S. 520, 544, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (holding that courts should not second-guess the decisions of prison administrators). The Second Circuit has interpreted *Youngberg* as holding that there is no constitutional right to a least restrictive environment. *See Society for Good Will to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1250 (2d Cir.1984). Thus, to the extent that the plaintiff is challenging the use of seclusion or four-point restraints as opposed to another measure, he fails to demonstrated that he was deprived of a constitutionally protected right.

■■■■ The court also considers the plaintiff's claim as asserting that he was placed in seclusion and four-point restraints as a disciplinary measure only. Dr. Foster has attached to his affidavit, a copy of the plaintiff's progress notes for the relevant time period. The progress notes document the repeated assessments by medical staff that the plaintiff was angry, agitated, out-of-control and posed a potential threat to other patients. (*See* Foster Affidavit Attachment 4.)

The plaintiff was placed in seclusion, followed by four-point restraints. After three hours, the plaintiff was released from four-point restraints and returned to seclusion. When the plaintiff's behavior again escalated, he was returned to four-point restraints. (*See* Foster Affidavit Attachment 4.) The plaintiff's condition was monitored every fifteen minutes while he was in seclusion and four-point restraints. (*See* Foster Affidavit Attachment 5.)

In response, the plaintiff provides his own affidavit, the affidavit of another in-

mate and a copy of a Whiting policy statement. As noted above, however, an affidavit in which the plaintiff restates conclusory allegations from the complaint is insufficient to oppose a motion for summary judgment. *See Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972); *Greene v. Georgia Pardons & Parole Bd.,* 807 F.Supp. 748, 750 n. 5 (N.D.Ga.1992). The other inmate avers that the plaintiff dropped his pen after conversing with staff on the morning of April 24, 1997, and did not throw the pen toward the staff member. The patient also states that the plaintiff did not appear angry when he first walked to the time-out room. (*See* Plaintiff's Declaration Exhibit A.) These statements, however, do not indicate that the actions of the defendants in confining the plaintiff in seclusion or four-point restraints for spitting were punitive.

The plaintiff also provides a policy statement dated 1993, describing the use of seclusion and restraints. The defendants do not indicate that this policy was not in effect in 1997. The statement provides that the use must be documented in patient records, not used for more than three hours without reassessment by a physician and used only after other less restrictive measure had been attempted. The plaintiff's progress notes reflect that he was not assessed by a physician at any time after the determination was made at 4:15 p.m. to reconfine the plaintiff in four-point restraints until he was released at 11:30 the following morning.

In light of this clear policy, the court cannot conclude as a matter of law that the actions of the defendants were not "a substantial departure from accepted professional judgment, practice or standards." *Youngberg,* 457 U.S. at 323, 102 S.Ct. 2452. Thus, the defendants' motion for summary judgment is denied with regard to the plaintiff's Fourteenth Amendment claim regarding confinement in seclusion and four-point restraints.

## IV. *Equal Protection Claim*

The plaintiff contends that he was denied equal protection of the laws because he was deprived of privileges enjoyed by other patients in Unit 2.

 The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This provision does not mandate identical treatment for each individual; rather it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 "To state an equal protection claim, a plaintiff must charge a government officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" *Brady v. Town of Colchester,* 863 F.2d 205, 216 (2d Cir. 1988) (citation omitted). State legislation that creates suspect or "quasi-suspect" classifications or that impinges a fundamental right is subject to heightened judicial scrutiny. *City of Cleburne,* 473 U.S. at 439, 105 S.Ct. 3249. All other classifications are valid if they are "rationally related to a legitimate state interest." *Id.* at 440, 105 S.Ct. 3249. The court does not apply a heightened standard of review to prisoner claims because prisoners "either in the aggregate or specified by offense" are not a suspect class. *Lee v. Governor of New York,* 87 F.3d 55, 60 (2d Cir.1996).

In this case, the plaintiff is not a member of a suspect class. As discussed above, however, he may have been deprived of a fundamental right. Because the plaintiff's equal protection claims is directly linked to his due process claim, the defendants' motion for summary judgment is denied as to the equal protection claims as well.

## V. *Retaliation Claim*

In conjunction with his access to courts claim, the plaintiff alleges that

[d]efendants have subjected and continue to subject the Plaintiff to live in a psychological environment that forces him to exist in a fearful state of mind on a day-to-day basis due to the intentional practices of defendants that are punitive and retaliatory in nature because of Plaintiff's exercising and attempting to exercise his right to petition the Government for redress . . . .

(Compl.¶ 71.) The court construes this as a claim that the defendants have retaliated against him for exercising his right of access to the courts.

■ The First Amendment protects an inmate from retaliation for exercising his right to seek redress through the prison grievance process or the courts. *See Hernandez v. Coughlin*, 18 F.3d 133, 138 (2d Cir.1994) (acknowledging that inmate could file § 1983 retaliation claim for actions taken after he informed public officials of his grievance); *Meriwether v. Coughlin*, 879 F.2d 1037, 1045 (2d Cir. 1989) (routine administrative decisions taken in retaliation for exercising constitutional rights constitutes § 1983 claim).

■ Because claims for retaliation are easily made, the Second Circuit has determined that these claims must be carefully examined by the court to eliminate potential abuse. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) ("because we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care"). "[R]ecognizing the possibilities for abuse in claims of this sort, we have insisted on a higher level of detail in pleading them and have held that a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) (internal citations and quotation marks omitted). To prevail on a retaliation claim, the plaintiff must show that the conduct provoking the retaliation was both constitutionally protected and a substantial or motivating factor in the decision by the correctional staff to take action against the inmate. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).

Here, the defendants correctly argue that the plaintiff fails to present any evidence that the defendants actions were retaliatory. Thus, the defendants' motion for summary judgment is granted as to the retaliation claim.

### VI. *Additional Federal Claim*

■ The plaintiff also includes in his complaint allegations regarding individual therapy with a therapist from another unit. The defendants argue that this claim should be dismissed under the prior pending action doctrine.

■ The defendants' argument is misplaced. The prior pending doctrine applies to preclude a second action filed containing the same claim. Here, the defendants indicate that this issue was determined by the court in *Zigmund v. Chi, et al.*, No. 3:98cv445(GLG)(JGM) (D.Conn. Dec. 9, 1999) (dismissing the plaintiff's due process claim concerning treatment with the therapist of his choice). That case, however, was filed several months after the present case and is no longer pending. Thus, reliance on the prior pending action doctrine is misplaced.

■ The claim, however, may be dismissed under the doctrine of res judicata. Because this claim has been decided, the plaintiff is precluded from addressing the same issue again in this case. *See Arizona v. California*, —— U.S. ——, 120 S.Ct. 2304, 2317, 147 L.Ed.2d 374 (2000) (noting that although res judicata was not specifically raised, a court may dismiss claim *sua sponte* when it is on notice that it has previously decided the issue presented). Accordingly, the plaintiff's claim regarding individual therapy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### Conclusion

The defendants' Motion for Summary Judgment [Doc. # 38] is GRANTED in part and DENIED in part. The motion is granted as to the First and Eighth Amendment Claims, the Fourteenth Amendment claims regarding the private room and use of a personal radio, and the retaliation claims and denied in all other respects. The claim regarding individual therapy is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Since we note that the due process and equal protection claims are based on the Institution's policy statement and the effect of the policy statement has not been addressed by the defendants, the denials of that portion of the motion are without prejudice to the filing of a supplemental motion for summary judgment addressing those claims.